UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
CAROLINE ROBINSON, the Personal )
Representative of the Estate of )
Arnell Robinson,               )
                               )
          Plaintiff,           )
                               ) Case No. 07-CV-1796 (EGS)
     v.                        )
                               )
DISTRICT OF COLUMBIA,          )
                               )
          Defendant.           )
_____)
```

**MEMORANDUM OPINION**

Pending before the Court is the District of Columbia's Motion for Partial Summary Judgment and Judgment on the Pleadings. The District of Columbia argues, *inter alia*, that plaintiff's claim under 42 U.S.C. § 1983 should be dismissed. Upon consideration of the motion, the response and reply thereto, the relevant case law, and the entire record, the motion is **GRANTED IN PART** and **DENIED WITHOUT PREJUDICE** in part. Specifically, the Court shall grant the motion insofar as it requests dismissal of plaintiff's Section 1983 claim. The Court will **REMAND** the remaining claims to the Superior Court of the District of Columbia.

I.   **BACKGROUND**

Arnell Robinson filed a complaint on October 3, 2007, alleging various claims against the District of Columbia,

Officer Earl Brown, and various "John Doe" officers.  Mr. Robinson alleged that defendants violated his rights in connection with an arrest at the 400 Block of O Street, NW in Washington, DC on October 4, 2006.  Specifically, Mr. Robinson alleged that while he was walking home from school, Officer Brown stopped his police cruiser, exited the vehicle, and began to verbally harass Mr. Robinson.  Compl. ¶¶ 7-9.  Mr. Robinson alleged that Officer Brown forcefully grabbed his right arm and twisted it behind him, throwing him face first into an iron fence.  Compl. ¶ 10.  Officer Brown also allegedly slammed his arm across Mr. Robinson's neck.  Compl. ¶ 11.  Several years earlier, Mr. Robinson had been shot in the face and neck area and this injury prevented Mr. Robinson from being able to yell, scream, or speak in a loud voice, and also affected his ability to hear in his right ear.  Compl. ¶¶ 11, 16-17.  Although Mr. Robinson's friends allegedly told Officer Brown about this injury, Officer Brown refused to remove his arm from Mr. Robinson's neck.  After he was arrested, Mr. Robinson was allegedly treated for pain in his neck and ribs and for ringing in his ears.  Compl. ¶¶ 17-22.

Upon the unrelated death of Mr. Robinson in early 2009, the Court granted plaintiff's motion to substitute a party, and substituted Caroline Robinson, Mr. Robinson's mother, as the Personal Representative of the Estate of Arnell Robinson.  Jun.

2

1, 2009 Minute Order.  On November 18, 2009, the Court granted as conceded Officer Brown's motion to dismiss for failure to serve Officer Brown with process in accordance with the Federal Rules of Civil Procedure.  Nov. 18, 2009 Minute Order.  On January 11, 2013, the District of Columbia, the only remaining defendant in this case, filed the instant motion.

**II. STANDARD OF REVIEW**

A. <u>Motion for Judgment on the Pleadings</u>

Under Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A motion pursuant to Rule 12(c) is appropriately granted when, at the close of the pleadings, "no material issue of fact remains to be resolved, and [the movant] is clearly entitled to judgment as a matter of law."  *Montanans for Multiple Use v. Barbouletos*, 542 F. Supp. 2d 9, 13 (D.D.C. 2008) (citations omitted).

When evaluating a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), courts employ the same standard that governs a Rule 12(b)(6) motion to dismiss.  *Jung v. Ass'n of Am. Med. Colls.*, 339 F. Supp. 2d 26, 35-36 (D.D.C. 2004).  A court must treat the complaint's factual allegations as true, "even if doubtful in fact," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but it need not accept as

3

true legal conclusions set forth in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, a court must accept the plaintiff's well-pleaded factual allegations to the extent that "they plausibly give rise to an entitlement to relief," *id.* at 679, and "may thus only grant judgment on the pleadings if it appears, even accepting as true all inferences from the complaint's factual allegations, that the plaintiff cannot prove any set of facts entitling him to relief." *Lans v. Adduci Mastriani & Schaumberg LLP*, 786 F. Supp. 2d 240, 265 (D.D.C. 2011).

B. <u>Motion for Summary Judgment</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing there is a genuine issue for trial." *Id.* at 324

(internal quotation marks omitted). The existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is only "material" if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy,* 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein v. District of Columbia,* 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson,* 477 U.S. at 247.

**III. DISCUSSION**

A. Conceded Claims

In its motion, the District argues that plaintiff's claims for punitive damages should be dismissed because a plaintiff cannot recover punitive damages against the District. The District also argues that plaintiff's claims for injunctive relief must be dismissed because Mr. Robinson is deceased and thus cannot be in danger of sustaining a direct injury from Officer Brown. In his opposition, plaintiff agreed to dismiss those claims. Pl.'s Opp. at 26. Accordingly, plaintiff's claims for punitive damages and for injunctive relief are **DISMISSED**.

## B. Municipal Liability Under Section 1983

The District argues that plaintiff's Section 1983 claim, alleged in Count I of the complaint, should be dismissed because the District cannot be liable under a theory of *respondeat superior*. The District is correct.

Section 1983 provides that

> [any] person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

42 U.S.C. § 1983.

To establish that a municipality is liable under section 1983, a plaintiff must prove both (1) "a predicate constitutional violation" and (2) "that a custom or policy of the municipality caused the violation." *Baker v. District of Columbia,* 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citing *Collins v. Harker Heights,* 503 U.S. 115, 124 (1992)); *see also Monell v. Dep't of Soc. Servs. of New York,* 436 U.S. 658, 691 (1978). Indeed, the policy or custom must be "the moving force behind the constitutional violation." *Carter v. District of Columbia,* 795 F.2d 116, 122 (D.C. Cir. 1986) (quoting *Monell*, 436 U.S. at 694); *see also Oklahoma City v. Tuttle,* 471 U.S. 808, 823 (1985)

(requiring an affirmative link between the city's policy and the alleged constitutional violation).

A municipality cannot be liable for the unconstitutional conduct of its employees based simply on a theory of *respondeat superior* or vicarious liability. *Monell,* 436 U.S. at 693; *see also City of Canton v. Harris,* 489 U.S. 378, 385 (1989); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986) ("[W]hile Congress never questioned its power to impose civil liability on municipalities for their *own* illegal acts, Congress did doubt its constitutional power to impose such liability in order to oblige municipalities to control the conduct of *others*."). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur,* 475 U.S at 479. This requirement flows directly from the statute itself. There are four basic categories of municipal action plaintiff may rely on to establish municipal liability: (1) express municipal policy; (2) adoption by municipal policymakers; (3) custom or usage; and (4) deliberate indifference. *Monell*, 436 U.S. at 690-94.

Although plaintiff did not allege a "custom or policy" theory of Section 1983 liability in the complaint, plaintiff responds to the District's motion and argues that the District

had a custom or policy of violating constitutional rights.[1]
Plaintiff also argues that liability is appropriate because of
the District's deliberate indifference to constitutional
violations. Section 1983 liability is not appropriate against
the District under either theory.

**1. Custom and Policy**

Plaintiff argues that two documents put the District on
notice that there were MPD customs that violated constitutional
rights. The first document is a 2001 Memorandum of Agreement
("2001 MOA") between the Department of Justice and the
Metropolitan Police Department regarding the use of excessive
force by MPD officers. The second document is a 2003 report
issued by the Citizen Complaint Review Board ("2003 CCRB
Report"). Plaintiff argues that the reports put the District on
notice of the problems with its officers' use of excessive force
and that they "establish the liability of the District" or at
the very least, establish that there are genuine issues of
material fact in dispute.

The Court disagrees. Several courts have considered, and
rejected, similar arguments regarding the 2001 MOA and the 2003

---

[1] Because plaintiff did not allege this theory in his complaint and also because he relies on documents outside of the complaint, the Court will consider the "custom and policy" issue under the summary judgment standard. Fed. R. Civ. P. 12(d) (when matters outside of the pleadings are presented to and not excluded by the court, a motion for judgment on the pleadings must be treated as one for summary judgment).

8

CCRB Report. *See, e.g., Robinson v. District of Columbia*, 403 F. Supp. 2d 39, 54-55 (D.D.C. 2005) (denying plaintiff's claim that the 2001 MOA established a "custom or policy"); *Byrd v. District of Columbia*, 297 F. Supp. 2d 136, 140 (D.D.C. 2003) (rejecting plaintiff's "lame attempt to transform the mere existence of a MOA into a policy or custom" of the District and noting that, if anything, the MOA indicated the District's efforts to improve); *Dormu v. District of Columbia*, 795 F. Supp. 2d 7, 25-27 (D.D.C. 2011) (holding that the mere awareness of an issue and need for improvement, as indicated in 2003 CCRB report, was not sufficient to impose municipal liability for conduct that occurred at a later date); *Hunter v. District of Columbia*, 824 F. Supp. 2d 125, 134 (D.D.C. 2011) (2003 CCRB Report was insufficient to establish a District custom or policy in favor of the use of excessive force and false arrest for conduct that occurred prior to arrival at the police station).

Plaintiff relies heavily on *Huthnance v. District of Columbia* for the proposition that the 2003 CCRB Report "put the District on notice that there was a problem with its police officers using excessive force and improper disorderly conduct arrests." 793 F. Supp. 2d 183, 199 (D.D.C. 2011). Plaintiff argues that such conduct was precisely what happened to plaintiff and, thus, are the proper basis for municipal liability under Section 1983. In *Huthnance*, however, the

alleged constitutional violation was the specific practice that was discussed in the 2003 CCRB Report. Specifically, the 2003 CCRB Report detailed the "post and forfeiture" procedure used by MPD, under which an arrestee posted $25 in collateral and was released from custody several hours later. After resolving the charge by paying $25, little or no review occurred after the arrests were completed, and CCRB believed that there was "the potential for a significant number of improper or unlawful disorderly conduct arrests in the District that could go unnoticed." CCRB Rep. at 24, ECF No. 106-28. In *Huthnance*, the court focused on the similarity between the arrest in that case and the problem identified in the 2003 CCRB Report. 793 F. Supp. 2d at 200. The court concluded that the 2003 CCRB Report put the MPD on constructive notice regarding the problems with its post and forfeiture policy. The court also noted, however, that there were several other ways in which the District could have been on notice of problems with its post and forfeiture policy.

In this case, the facts are not those specifically identified in the 2003 CCRB Report. Plaintiff was arrested but was not subject to the post and forfeiture procedure. Similarly, in *Hunter*, the court noted that even if the 2003 CCRB Report established a policy or custom relevant to a plaintiff's release from custody (the post and forfeiture procedure), it would not

10

make the District liable for the alleged false arrest and use of excessive force that plaintiff alleges occurred prior to his arrival at the police station. 824 F. Supp. 2d at 134. The Court agrees and finds that the 2003 CCRB Report did not put the District on notice of a custom or policy of constitutional violations such that municipal liability under Section 1983 can be imposed on the District. Similarly, the Court finds that the 2001 MOA also does not establish a custom or policy sufficient to impose municipal liability on the District.

**2. Deliberate Indifference**

Plaintiff also claims that the District acted with deliberate indifference to the constitutional violations of the MPD. Specifically, plaintiff argues that the District's failure to accept and investigate citizen complaints about Officer Brown and failure to take disciplinary action against Officer Brown" amounts to deliberate indifference of plaintiff's constitutional rights.

For there to be municipal liability under a theory of deliberate indifference, a jury must find from admissible evidence that the District was "the moving force" behind the alleged constitutional violations based on a theory of deliberate indifference to a known risk of such harm. *Muhammad v. District of Columbia*, 584 F. Supp. 2d 134, 138 (D.D.C. 2008). "Deliberate indifference means that 'faced with actual or

constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction.'" *Coleman v. District of Columbia,* 828 F. Supp. 2d 87, 94 (D.D.C. 2011) (quoting *Warren v. District of Columbia,* 353 F.3d 36, 39 (D.C. Cir. 2004)). Furthermore, a municipality's failure to train its officers or employees adequately qualifies as a custom or policy that violates Section 1983 only when that failure "amounts to deliberate indifference towards the constitutional rights of persons in its domain." *Kivanc v. Ramsey,* 407 F. Supp. 2d 270, 278 (D.D.C. 2006) (quoting *Daskalea v. District of Columbia,* 227 F.3d 433, 441 (D.C. Cir. 2000)) (other citation omitted). Similarly, the failure to investigate complaints cannot support a deliberate indifference theory unless the conduct was suggestive of the unconstitutional behavior on hand and put the District on notice of the possibility of constitutional violations. *Muhammad v. District of Columbia*, 881 F. Supp. 2d 115, 123 (D.D.C. 2012) (investigation of 13 complaints against officer did not constitute deliberate indifference where only two of the complaints were sustained and none of the complaints were for conduct suggestive of the asserted unconstitutional behavior in the case at hand).

   Here, there is no evidence that the MPD would have been aware of Officer Brown's alleged likelihood of violating

constitutional rights.  Plaintiff avers that Mr. Butler, who had been with Mr. Robinson at the time of his arrest, attempted to file a complaint against Officer Brown on October 4, 2006, the day of the arrest, but was deterred from doing so.  Even assuming this to be true, it does not provide evidence of the District's *prior* knowledge of Officer Brown's alleged propensity to violate constitutional rights.  Plaintiff also argues that Officer Brown made false statements regarding the arrest under oath.  Again, even assuming this is true, it does not provide any evidence of the District's prior knowledge of Officer Brown's conduct.  Nor would a false statement under oath have been "suggestive" of the alleged constitutional violation in this case.  *See Muhammad*, 881 F. Supp. 2d at 123.  Accordingly, because none of the evidence cited by plaintiff would have provided the District with knowledge of Officer Brown's alleged propensity to violate the constitutional rights of arrestees, the Court finds that the District cannot be held liable under Section 1983 under a "deliberate indifference" theory.

Accordingly, Count I of plaintiff's complaint, alleging a Section 1983 violation against the District, will be **DISMISSED**.

C. <u>Supplemental Jurisdiction</u>

In light of the dismissal of the Section 1983 claim, the complaint contains no further federal causes of action over which this court has original subject matter jurisdiction. The Court must therefore consider whether to continue to exercise supplemental jurisdiction over these remaining claims pursuant to 28 U.S.C. § 1367(a), which provides, in pertinent part, that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]" "Whether to retain jurisdiction over pendent . . . claims after the dismissal of the federal claims is a matter left to the sound discretion of the district court[.]" *Ali Shafi v. Palestinian Auth.*, 642 F.3d 1088, 1097 (D.C. Cir. 2011) (citations omitted).

In determining whether to dismiss supplemental state law claims, "the district court is to be 'guided by consideration of the factors enumerated in 28 U.S.C. § 1367(c).'" *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 424 n.4 (D.C. Cir. 2005) (citations omitted). "'[I]n the usual case in which all federal law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward

declining to exercise jurisdiction over the remaining state law claims.'"  *Id*. at 424 (citations omitted).

Here, although the claims have been pending for several years, most of that time has been spent in discovery, with very little Court involvement.  The Court has thus not yet invested significant time and resources on the state law claims, and the District of Columbia Superior Court would naturally have greater familiarity and interest in the issues that remain, insofar as they require interpretation of the District's own statutory and common law.  Accordingly, the Court finds that it is in the interests of judicial economy, convenience, fairness, and comity to remand the remaining state law claims to the Superior Court for the District of Columbia.

## IV. CONCLUSION

For all of the foregoing reasons, the District of Columbia's Motion for Partial Summary Judgment and Judgment on the Pleadings is **GRANTED IN PART** and **DENIED WITHOUT PREDJUDICE IN PART**.  Specifically, the Court shall grant the motion for summary judgment insofar as it requests dismissal of plaintiff's Section 1983 claim.  The Court will also grant as conceded the motion for judgment on the pleadings as to plaintiff's claims for punitive damages and for injunctive relief.  The Court, in its discretion, declines to exercise supplemental jurisdiction over the remaining claims.  Instead, this case is hereby

**REMANDED** for further proceedings to the Superior Court of the District of Columbia.

An appropriate Order accompanies this Memorandum Opinion.

**Signed:**  **Emmet G. Sullivan**
**United States District Judge**
**August 30, 2013**